Deborah Jean INGLE, Administrator of the ESTATE OF Christopher James Burt INGLE, Plaintiff–Appellant,

v.

Mike YELTON, in his official and individual capacities; City of Asheville; Chris Young, in his official and individual capacities; Joe Johnson, Defendants–Appellees.

No. 05–1556.

United States Court of Appeals, Fourth Circuit.

Argued: Feb. 1, 2006.

Decided: March 8, 2006.

192

**ARGUED:** Kyle William King, Weaverville, North Carolina, for Appellant. Frederick S. Barbour, McGuire, Wood & Bissette, P.A., Asheville, North Carolina, for Appellees. **ON BRIEF:** Rendi L. Mann–Stadt, McGuire, Wood & Bissette, P.A., Asheville, North Carolina; Curtis W. Euler, Office of City Attorney for the City of Asheville, Asheville, North Carolina, for Appellees.

Before WILLIAMS, MOTZ, and KING, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge MOTZ wrote the opinion, in which Judge WILLIAMS and Judge KING joined.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge.

Deborah Ingle brought this 42 U.S.C. § 1983 (2000) excessive force action against the Asheville, North Carolina, Police Department and three of its officers after the officers fatally shot her son. Ingle asserted, *inter alia,* that the district court could not rule on the defendants' summary judgment motion without providing her an opportunity to discover whether cameras installed in police vehicles on the scene recorded videotapes of the incident. In granting summary judgment for the defendants without allowing that discovery, the district court abused its discretion.

### I.

Shortly after 3:00 a.m. on July 15, 2001, Christopher Ingle and his father, Burt Ingle, had a physical altercation concerning Christopher's sister, Tina Ingle. Burt was restraining Tina, who had just run away from a youth facility, while Christopher unsuccessfully tried to free her. Christopher left and returned with his father's 12-gauge shotgun. He fired three rounds, striking both his father and sister with the final shot. They were taken to the hospital in critical condition but survived.

Christopher then took the shotgun and fled in his father's red pickup truck. The Buncombe County Sheriff's Department broadcast a description of the vehicle Christopher was driving. At approximately 3:30 a.m., Asheville Police Department ("APD") Officer Owen Jones spotted a vehicle matching that description. Officer Jones chased Christopher at high speed in his police cruiser until Christopher pulled into the parking lot of a Holiday Inn Sun Spree motel.

Several officers, including the defendants, submitted affidavits about what happened next. Officer Jones, who is not a defendant, stated that Christopher began to get out of the truck with his hands raised in the air but then lunged back into the truck to get his shotgun, which he pointed at Officer Jones. According to Officer Jones, as backup units began arriving on the scene, Christopher jumped back into his truck, put it in reverse, and drove under the breezeway and past the motel's main entrance. Officer Jones heard a shotgun blast as Christopher passed by Officer Smith. Then, Officer Jones maintains, Christopher came to a stop and pointed the barrel of the gun out the driver's side window. When Christopher lowered the barrel to aim the weapon at other officers, they shot him. Officer Jones did not fire.

The defendants offered consistent accounts. Officer Mike Yelton stated that after he arrived on the scene in his vehicle, he heard a shotgun blast and turned to see the red pickup truck passing under the breezeway. When the truck stopped, he observed the driver open the door and step out holding the gun over his head, as if to surrender. Officer Yelton then saw the driver climb back into the truck, lean away from the driver's side door, and point the barrel of the shotgun out the window. He yelled for the driver to drop the gun, but Christopher instead lowered the barrel until it was aimed at Officer Yelton. The officer then fired at Christopher with his rifle.

Officer Christopher Young maintained that as he arrived on scene in his police car he heard another officer say that shots had been fired. Officer Young observed that the truck had come to a stop near the motel's front entrance and he heard Officer Yelton yelling at the driver to drop his weapon. He saw Christopher lean sideways, away from the driver's door of his truck, and point the barrel of his gun at

Officer Yelton. Officer Young then fired at the truck.

Officer Joseph Johnson stated that he heard a shotgun blast as he approached the scene in his police cruiser. He turned into the parking lot and saw Christopher driving the truck toward him. After veering to avoid a collision, Officer Johnson drove past the truck and stopped his car next to Officer Jones's vehicle. Officer Johnson got out of the car with his K–9 unit. As he was reaching for the dog's collar, he saw the driver open the door and stick a leg outside. While attaching the leash he heard another shotgun blast and looked up to see Christopher aiming his shotgun at the officers. Officer Johnson drew his weapon and, after hearing shots that he believed came from Christopher, fired at the truck's headrest.

The officers fired approximately thirty rounds at Christopher, six of which struck and killed him. During the shooting, a total of eight law enforcement vehicles were parked either in the motel's driveway or at the entrance to its paved parking lot. Two of those vehicles belonged to the Buncombe County Sheriff's Department, and the remaining six vehicles were from the APD. In addition, three other APD vehicles were located nearby on Holiday Inn Drive.

## II.

On July 14, 2003, Deborah Ingle ("Ingle"), Christopher's mother and the administrator of his estate, filed this action under 42 U.S.C. § 1983 and N.C. Gen.Stat. § 28A–18–1 and –18–2 in North Carolina state court. The defendants—the City of Asheville and APD Officers Yelton, Young, and Johnson—removed the action to federal district court on August 11, 2003, and then answered the complaint and moved to dismiss the case on August 29, 2003. Two weeks later, on September 12, 2003, defen-

dants requested that the court impose Rule 11 sanctions against Ingle.

On October 1, 2003, Ingle moved to extend the time to respond to both the motion to dismiss and the motion for Rule 11 sanctions. In that motion she specifically requested discovery concerning "any videotapes taken during the pursuit of Chris Ingle or at the scene of the shooting." Without addressing the request for videotapes evidence, the magistrate judge denied the motion to extend time to respond to the motion to dismiss. However, he did allow discovery regarding the motion for Rule 11 sanctions, because it relied on information not contained in the pleadings. As part of that discovery, Ingle requested, and the magistrate judge ordered, production of the crime scene photographs.

On April 2, 2004, after the district court, in "an abundance of caution," denied the initial motion to dismiss and the motion for Rule 11 sanctions without prejudice, defendants filed a second motion to dismiss, or in the alternative for summary judgment. Two weeks later, on April 16, 2004, Ingle responded by filing a Rule 56(f) motion to delay consideration of the summary judgment motion until discovery was complete, renewing her request for "production of videotape evidence of the chase and the shooting." She also asserted that summary judgment was inappropriate because the record contained material factual disputes. Ingle posited that Christopher could not have pointed his shotgun out the window, as the officers asserted, because the physical evidence demonstrated that the window was closed when it shattered.

The district court denied the Rule 56(f) motion, finding that the "record appears to be complete as to the perceptions of the officers," and entered summary judgment for the defendants. The court held that they were entitled to qualified immunity

because, regardless of whether Christopher's truck window was open or closed, the officers reasonably feared for their safety when Christopher aimed his weapon at them.

Ingle then filed a Rule 59(e) motion to amend the judgment in light of "new evidence." She submitted the affidavit of an investigator, Cheryl King, who works for (and is the wife of) Ingle's attorney. King asserts that several unidentified men repeatedly approached her about the Ingle case, and that she eventually accompanied them to an unfamiliar location where she viewed a videotape of the incident. The tape allegedly showed Christopher standing outside his truck with his hands over his head. King heard what sounded like a shot and saw Christopher moving back toward the truck. At the crucial moment when the officers claim that Christopher pointed his shotgun at them, however, King states that a man obscured her view by standing between her and the television. King did not obtain a copy of the tape. The district court denied the Rule 59(e) motion, finding that the evidence had been available before summary judgment, and therefore was not "new."

Ingle appeals both the district court's grant of summary judgment to the defendants and its denial of her Rule 59(e) motion.

### III.

With respect to summary judgment, Ingle maintains that the district court should have granted her Rule 56(f) motion to engage in additional discovery before considering the summary judgment motion. Rule 56(f) requires that "summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir.1995) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Rule 56(f) motions may be denied, however, if "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trustees*, 55 F.3d 943, 954 (4th Cir.1995). We review the denial of a Rule 56(f) motion for abuse of discretion. *Nguyen*, 44 F.3d at 242. We will not reverse a denial "unless there is a clear abuse of discretion or, unless there is a real possibility the party was prejudiced by the denial of the extension." *Strag*, 55 F.3d at 954.

In holding that the defendant officers were entitled to qualified immunity, the district court relied almost exclusively on the officers' assertions that Christopher aimed his weapon at them. Ingle, of course, has no way to directly contradict the officers' statements. Because this is a deadly force case, "the witness most likely to contradict [the officers'] story—the person shot dead—is unable to testify." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994).

In such circumstances, "a court must undertake a fairly critical assessment of the forensic evidence, the officer's original reports or statements and the opinions of experts to decide whether the officer's testimony could reasonably be rejected at a trial." *Plakas v. Drinski*, 19 F.3d 1143, 1147 (7th Cir.1994). When there is contrary evidence, a "court may not simply accept what may be a self-serving account by the police officer." *Scott*, 39 F.3d at 915. *Cf. Elliott v. Leavitt*, 99 F.3d 640, 644–45 (4th Cir.1996) (noting officers' account in lethal force case was consistent with the physical evidence). Indeed, several courts have vacated the entry of summary judgment when the physical evidence undermined the officers' assertions that they feared for their safety before deploy-

ing lethal force, even when there was no other witness to the shooting. *See, e.g., Abraham v. Raso,* 183 F.3d 279, 293–94 (3d Cir.1999) (ballistic and videotape evidence contradicted security guards' assertions); *Hopkins v. Andaya,* 958 F.2d 881, 885 (9th Cir.1992) ("[T]he medical evidence in the record undermines [the officer]'s story in numerous ways."); *Ting v. United States,* 927 F.2d 1504, 1510 (9th Cir.1991) (ballistic evidence undermined claim that decedent was advancing threateningly toward officer).

■ Given the facts of this case, the district court could not conduct a thorough assessment of the officers' statements without allowing discovery as to whether videotapes exist and, if so, what they depict. Ingle presented compelling reasons to allow the requested discovery. She alleged that the officers' account—that the decedent aimed the gun at them through the open window of the truck—conflicts with the physical evidence suggesting that the window was closed when the officers shot it out. She even submitted an expert affidavit concluding that the "shards of glass visible around the entire perimeter of the driver's side window" constitute "proof that the driver's window was broken when the window was in a complete rolled-up position." The State Bureau of Investigation echoed that view in its report on the incident, noting that the window was "in an upward position" when it was shot out.

Moreover, Ingle presented a plausible argument that such videotapes may actually exist. She asserted, and defendants' counsel confirmed at oral argument, that the APD instituted a policy of installing cameras in its vehicles in April 2001, several months before the shooting. While it may be that at the time of the shooting no cameras had yet been installed or were

operative in any of the six APD vehicles at the scene, or the three additional APD vehicles located along Holiday Inn Drive, this policy clearly distinguishes Ingle's Rule 56(f) motion from cases where "the evidence sought was almost certainly non-existent or was the object of pure speculation." *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.,* 784 F.2d 1472, 1475 (9th Cir.1986).[1]

Because there was a sufficient basis to believe such videos existed, and because this evidence represented Ingle's principal opportunity to contradict the assertion that the district court found dispositive, the court should have allowed discovery as to the videos. *See VISA Int'l Serv. Ass'n,* 784 F.2d at 1475 ("[T]he denial of a Rule 56(f) application is generally disfavored where the party opposing summary judgment makes (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists.").

Two additional factors counsel in favor of finding the denial of the Rule 56(f) motion an abuse of discretion in this case. First, denial of a Rule 56(f) motion is particularly inappropriate when, as here, "the materials sought are the object of outstanding discovery." *Strag,* 55 F.3d at 954. As noted above, Ingle first requested discovery regarding the videotapes in October 2001, only two months after the defendants removed the case to federal court and six months before she renewed that request in her Rule 56(f) motion; the court seemingly ignored that request in ruling on her earlier motion.

Additionally, courts should hesitate before denying Rule 56(f) motions when the party opposing summary judgment is at-

---

1. We do not rely on Mrs. King's affidavit as evidence that tapes exists, for the affidavit

was not before the district court at the time it denied the Rule 56(f) motion.

tempting to obtain necessary discovery of information possessed only by her opponent. *See, e.g., Willis v. Town of Marshall,* 426 F.3d 251, 264 (4th Cir.2005). In *Willis* we held that the district court had wrongly denied the Rule 56(f) motion of a plaintiff who had asserted a "class of one" equal protection claim after a town banned her from dancing at public functions because of her style of dancing. To rebut the town's summary judgment motion, the plaintiff needed to know whether the town received any complaints about others' dancing styles. We held that because this fact was "wholly within the knowledge of" the town and was essential to Willis's claim, the denial of the Rule 56(f) motion constituted an abuse of discretion. *Id.* at 263. Similarly, here, whether tapes existed and what they showed were entirely within the knowledge of the defendants.[2]

Because we conclude that the district court prematurely granted summary judgment, we do not address Ingle's contention that summary judgment was inappropriate on the record before that court. *See, e.g., Resolution Trust Corp. v. N. Bridge Assocs., Inc.,* 22 F.3d 1198, 1209 n. 14 (1st Cir.1994); *Wichita Falls Office Assocs. v. Banc One Corp.,* 978 F.2d 915, 920 (5th Cir.1992); *First Chicago Int'l. v. United Exch. Co., Ltd.,* 836 F.2d 1375, 1379 (D.C.Cir.1988). Once discovery related to the videotapes is completed, the district court "may again consider [defendants'] motion for summary judgment" if it deems that to be the appropriate course. *Dean v. Barber,* 951 F.2d 1210, 1214 (11th Cir.1992) (quoting *Snook v. Trust Co. of Ga.,* 859 F.2d 865, 870 (11th Cir.1988)). We "do not prejudge the propriety of summary judgment" at that point. *Farmer v. Brennan,* 81 F.3d 1444, 1453 (7th Cir.1996).

## IV.

Unlike claims related to the factual record at summary judgment, Ingle's claim that the district court erred in denying her Rule 59(e) motion to amend the judgment is not in any way affected by our remand. *Cf. Willis,* 426 F.3d at 257–67 (deciding other constitutional and preliminary injunction issues despite remanding for additional discovery on "class of one" equal protection claim). Accordingly, we address it now.

Rule 59(e) motions will be granted in three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir.1998). If relying on new evidence, "a party must produce a legitimate justification for not presenting the evidence during the earlier proceeding." *Small v. Hunt,* 98 F.3d 789, 798 (4th Cir.1996) (internal quotation marks omitted). We review the district court's denial of a Rule 59(e) motion for abuse of discretion. *United States ex rel. Becker v. Westinghouse Savannah River Co.,* 305 F.3d 284, 290 (4th Cir.2002).

The only basis Ingle proffers for her Rule 59(e) motion is the second; she maintains that the King affidavit recounts

---

**2.** The district court did not abuse its discretion in denying discovery of the remaining items requested in the Rule 56(f) motion, however. Ingle also sought, *inter alia,* to depose a witness concerning the location of blood at the scene and an insurance adjuster about whether the truck door was open when shot. While this evidence might become probative *if* the videotapes show what Ingle claims they will, on its own, at present, this evidence does not "create[ ] a genuine issue of material fact sufficient to defeat summary judgment." *Strag,* 55 F.3d at 954. Nor, unlike the videotapes, was this evidence the subject of pending discovery requests or wholly within the defendants' possession.

new evidence not available at trial. But, as Ingle concedes, all of the events alleged in the King affidavit occurred *before* the district court entered summary judgment. Thus, this evidence, to the extent it was evidence, was available at the time the district court ruled. Ingle contends that her failure to make this information known at that time was justified because (1) the "best evidence" rule would have prohibited the use of the affidavit in lieu of the actual tape, and (2) she feared that the people possessing the tape would not have surrendered it if the court were made aware of its existence. The district court acted within its discretion in denying the Rule 59(e) motion on the basis that the evidence was not new and Ingle's proffered justifications for not presenting it sooner were "strategic decision[s] for which the Plaintiff bears responsibility." *Cf. Lostumbo v. Bethlehem Steel, Inc.*, 8 F.3d 569, 570 (7th Cir.1993) ("The district court did not abuse its discretion in determining that the affidavit Lostumbo sought to introduce was available during the pendency of the summary judgment motion.").

Moreover, even if the district court had considered the King affidavit, that affidavit offered no reason for amending the judgment. As noted above, the court relied almost exclusively on the fact that Christopher aimed his gun at the officers. King conceded that she could not see the television at the point in the tape where that is alleged to have occurred. Thus her account does nothing to contradict the facts the district court relied on as uncontested; indeed, Officer Yelton's affidavit explicitly corroborates it.

## V.

Therefore, we affirm the denial of Ingle's Rule 59(e) motion, reverse the denial of her Rule 56(f) motion, vacate the entry of summary judgment, and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED*