UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1315

DEBORAH JEAN INGLE, Administrator of the
Estate of Christopher James Burt Ingle,

Plaintiff - Appellant,

versus

MIKE YELTON, in his official and individual
capacities; CHRIS YOUNG, in his official and
individual capacities; JOE JOHNSON, in his
official and individual capacities; CITY OF
ASHEVILLE,

Defendants - Appellees.

Appeal from the United States District Court for the Western
District of North Carolina, at Asheville. Lacy H. Thornburg,
District Judge. (1:03-cv-00199)

Argued: January 31, 2008          Decided: February 14, 2008

Before WILLIAMS, Chief Judge, and MOTZ and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Kyle William King, Weaverville, North Carolina, for
Appellant. Rendi Lynn Mann-Stadt, MCGUIRE, WOOD & BISSETTE, P.A.,
Asheville, North Carolina; Frederick S. Barbour, BARBOUR LAW FIRM,
P.L.L.C., Asheville, North Carolina, for Appellees. **ON BRIEF:**
Curtis W. Euler, OFFICE OF THE CITY ATTORNEY FOR THE CITY OF
ASHEVILLE, Asheville, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Deborah Ingle brings this appeal challenging the district court's denial of two discovery motions and grant of summary judgment against her. We affirm.

I.

A.

We have previously considered this case, and we refer to our prior opinion for a more detailed factual account of the incident and the procedural history. See Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 193-94 (4th Cir. 2006).

Shortly after 3 a.m. on July 15, 2001, Christopher Ingle shot his father and sister with a shotgun. (Both were hospitalized but survived). Christopher then fled in his father's truck. Through a series of radio transmissions, the officers of the Asheville Police Department ("APD") learned that a suspect had shot and injured two people and had fled in a red Ford, dual axle pickup truck. A highspeed chase ensued, ending in the parking lot of a hotel.

Several law enforcement officers submitted affidavits about the incident that followed. Together, these affidavits present a coherent and consistent account. Christopher stopped the truck in the parking lot and began to get out of the truck. He then lunged inside, grabbed the shotgun, and aimed it at Officer Jones. As

3

backup arrived, Christopher got back in the truck and reversed past the hotel's main entrance. Christopher then came to a stop. Officer Mike Yelton ordered him to drop his gun. Christopher lowered the barrel of his shotgun so that it pointed at some of the officers. Officers Yelton, Chris Young, and Joe Johnson then fired at him, and six of the rounds struck and killed him. By the time the shooting occurred, several law enforcement vehicles were parked in the driveway or at the entrance of the parking lot.

Deborah Ingle ("Ingle"), Christopher's mother and the administrator of his estate, filed this action against Officers Yelton, Young, and Johnson ("defendants") under 42 U.S.C. § 1983 and N.C. Gen. Stat. § 28A-18-1 and -18-2. The defendants filed a motion to dismiss, or in the alternative for summary judgment. Ingle responded by filing a Rule 56(f) motion seeking further discovery and production of any videotape evidence of the chase and shooting. She also challenged the motion for summary judgment.

The district court denied the Rule 56(f) motion, finding that the "record appears to be complete as to the perceptions of the officers." The district court held that the defendants were entitled to qualified immunity and granted the defendants summary judgment. Ingle ex rel. Estate of Ingle v. Yelton, 345 F. Supp. 2d 578 (W.D.N.C. 2004).

On appeal, we reversed the district court's denial of Ingle's Rule 56(f) motion and vacated the grant of summary judgment. See

4

Ingle, 439 F.3d at 196-98.  The APD had begun installing cameras in its vehicles several months before the incident.  Although Ingle could not determine whether any of the vehicles present that night had cameras installed, the new policy provided sufficient basis to conclude that a videotape of the incident might exist.  Such a videotape might have provided Ingle with an opportunity to contradict the affidavits upon which the district court relied.  For this reason, we remanded for further discovery as to the existence of a videotape of the incident; our mandate specifically noted that the district court could reconsider the defendants' motion for summary judgment again after completion of discovery.  Id. at 197.

B.

On remand, the district court ordered the parties to engage in discovery as to the existence and contents of any possible videotapes.  During discovery, the defendants provided affidavits from the officers known to be on the scene at the time of the incident, and all denied having any operational camera in their vehicles.  The defendants also provided affidavits from the Captain of the Sheriff's Department and from the investigating officers of the State Bureau of Investigation ("SBI").  In these affidavits, all officers denied having any videotape of the incident or any knowledge of such a videotape.  Lieutenant Don Babb performed an internal investigation, and during his deposition he testified that

5

he had thoroughly searched the evidence room, exhausted all leads, and found no evidence of a videotape. The district court extended discovery twice, so Ingle had ninety days to discover information on the videotapes.

After the close of discovery, Ingle filed a motion to compel the City to provide identifying information for all police vehicles equipped with video cameras on that date. After a hearing on the matter, the district court denied Ingle's motion to compel.

Ingle then filed a motion, pursuant to Rule 56(f), to engage in additional discovery. Ingle sought to listen to an audiotape of the police radio communications from that night and to depose Officer Fowler in light of photographic evidence revealing an object on top of her dashboard, suggesting that her vehicle might have contained a camera. The district court denied discovery on the audiotape and ordered the defendants to provide specific information about Officer Fowler's vehicle and whether it contained a camera. The defendants explained that Officer Fowler's vehicle had contained a radar unit and it appeared in the photograph. Officer Fowler also provided an affidavit explaining that she had been using radar, not a camera. The court then denied the Rule 56(f) motion.

After the close of discovery, the district court granted the defendants' motion for summary judgment on the basis of qualified immunity.

On appeal, Ingle initially asserts that the district court erred in denying her motion to compel and her Rule 56(f) motion. We review both of these rulings for an abuse of discretion, because the scope and conduct of discovery lie within the sound discretion of the district court. See, e.g., Nguyen v. CAN Corp., 44 F.3d 234, 242 (4th Cir. 1995) (Rule 56(f) motion); Erdmann v. Preferred Research, Inc. of Georgia, 852 F.2d 788, 792 (4th Cir. 1988) (motion to compel).

### A.

Ingle argues that the district court should have extended discovery to identify all police vehicles equipped with video cameras on the night of the incident. Ingle contends that the officers known to be at the scene, the investigating officers of the SBI, and the APD's internal investigators might have overlooked or failed to identify an officer and vehicle on the scene. Under this theory, an unidentified officer in an unidentified vehicle might have recorded the incident. Ingle also presented the testimony of Cheryl King. During her testimony to the court, King stated that she was shown a videotape of the incident, and although someone obscured her vision during the crucial moments of the shooting, she knows that a videotape exists. Although King cannot identify who showed her the tape, where they showed it to her, or what has become of the tape she viewed, Ingle contends that King's

testimony establishes that a videotape of the incident exists, and it must have been produced by an APD camera.

Under Federal Rule of Civil Procedure 26, a plaintiff may obtain discovery regarding any nonprivileged matter that is relevant to the claim. Fed. R. Civ. P. 26(b)(1). "Even assuming that this information is relevant (in the broadest sense), the simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had." Nicholas v. Wyndham Intern., Inc., 373 F.3d 537, 543 (4th Cir. 2004). A district court "must limit the frequency or extent of discovery otherwise allowed" if it concludes that "(I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit . . . ." Fed. R. Civ. P. 26(b)(2)(C). As discussed above, the defendants and APD provided numerous affidavits, depositions, and evidence of two thorough investigations. All evidence confirmed that the APD had not produced a videotape and did not possess one. We cannot conclude that the district court abused its discretion in limiting discovery at this point and denying Ingle's motion to compel.

Ingle next contends that the district court erred in denying her Rule 56(f) motion. Ingle argues that the district court should have allowed discovery on the audiotape of the police radio communications from that night and should have granted Ingle's request to depose Officer Fowler.

"[A] district court acts wholly within its discretion in denying additional discovery where the delay in discovery is due to the fault of the complaining party." Strag v. Board of Trustees, Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995). Ingle has possessed the SBI report since 2003, and that report contains a transcript of the police radio communications. Similarly, Ingle possessed the crime scene photograph revealing an object on Officer Fowler's dashboard since 2003. Ingle has provided no satisfactory explanation for the delay in requesting further discovery based on this evidence. Moreover, the district court required Officer Fowler and the APD to provide further evidence establishing that the object on the dashboard was a radar unit. Given these facts, the district court did not abuse its discretion in denying Ingle's Rule 56(f) motion.

## III.

Finally, Ingle contends that the district court erred in granting the defendants' motion for summary judgment on the basis

of qualified immunity.  We review a grant of summary judgment de novo.  Long v. Dunlop Sports Group Ams., Inc., 506 F.3d 299, 301 (4th Cir. 2007).  A defendant is entitled to summary judgment only when there is no genuine issue as to any material fact and the undisputed facts establish that the defendant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

When reviewing the district court's grant of qualified immunity, we begin by determining whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if the facts reveal a constitutional violation do we turn to "the next, sequential step," which is "to ask whether the right was clearly established" at the time of the events at issue.  Id.

Ingle asserts that defendants violated Christopher's "Fourth Amendment right to be free from unreasonable searches and seizures, which encompasses the right to be free of arrests, investigatory stops, or other seizures effectuated by excessive force."  Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006).  "[C]laims of excessive force are to be judged under the Fourth Amendment's 'objective reasonableness' standard."  Brosseau v. Haugen, 543 U.S. 194, 197 (2004).  "The intrusiveness of a seizure by means of deadly force is unmatched."  Tennessee v. Garner, 471 U.S. 1, 9 (1985).  Officers may reasonably use deadly force, however, when

10

they have "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Id. at 11. The objective reasonableness of an application of deadly force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989).

Ingle contends that the physical evidence suggests that the window of the vehicle was closed when the firing began, and a closed window would have interfered with Christopher's ability to aim the shotgun at the defendants. Further, relying on King's testimony recounting the seconds of the videotape she overheard when her view was obstructed, Ingle argues that the first shot was fired several seconds before the other shots occurred. Ingle argues that Christopher may have aimed the shotgun at the officers in self-defense and that the slightly earlier shot is inconsistent with the officers' affidavits.

None of this evidence creates a dispute as to a material fact. The record reveals the following undisputed facts. The defendants knew that: (1) Christopher was suspected in a domestic shooting; (2) Christopher had fled arrest and engaged in a high speed chase; (3) moments earlier, Christopher had pointed his shotgun at an officer and refused to surrender; (4) finally, and crucially, all available evidence indicates that Christopher was lowering or pointing his shotgun at the officers when they began firing; none

11

of Ingle's evidence suggests otherwise.  A reasonable officer at the scene would have had probable cause to believe that Christopher posed a threat of serious physical harm.  Even if the car window was closed and did interfere with his aim, "[t]he car window was no guarantee of safety when the pointed gun and the officers at whom it was aimed were in such close proximity."  <u>Elliott v. Leavitt</u>, 99 F.3d 640, 642 (4th Cir. 1996).

Because no constitutional violation occurred, the defendants are entitled to qualified immunity and summary judgment.


IV.

For the foregoing reasons, the judgment of the district court is

<u>AFFIRMED</u>.