**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-1074**

---

AARON WILLIAMS,

        Plaintiff - Appellant,

    v.

MARYLAND DEPARTMENT OF HEALTH,

        Defendant - Appellee.

---

Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Mark Coulson, Magistrate Judge.  (1:21-cv-01988-JMC)

---

Submitted: January 13, 2023                    Decided:  May 29, 2024

---

Before GREGORY and AGEE, Circuit Judges, and FLOYD, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

**ON BRIEF:** James M. Ray, II, RAY LEGAL GROUP, LLC, Silver Spring, Maryland, for Appellant.  Brian E. Frosh, Attorney General, Brandy J. Gray, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Aaron Williams appeals the district court's order granting summary judgment in favor of his former employer, Maryland Department of Health, and denying his Federal Rule of Civil Procedure 56(d) motion to postpone ruling on summary judgment until the parties have the opportunity to engage in discovery regarding his claims under Section 504 of the Rehabilitation Act of 1973 for failure to accommodate his disability, discrimination, and retaliation.  Our review of the record and the district court's opinion reveals no error.  Accordingly, we affirm.

## I.

"We review de novo a district court's decision to grant summary judgment, applying the same legal standards as the district court and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Ballengee v. CBS Broadcasting, Inc.*, 968 F.3d 344, 349 (4th Cir. 2020).  This Court reviews a district court's denial of a Rule 56(d) motion under an abuse of discretion standard.  *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (citing *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council Baltimore*, 721 F.3d 264, 280 (4th Cir. 2013)).

## II.

The Maryland Department of Health's ("MDH") Division of Cost Accounting Reimbursement ("DCAR") secures payment for services administered by MDH healthcare providers.  S.J.A. 61.  DCAR investigates who is responsible for payment related to the care provided to MDH patients and bills the responsible party once they are identified.

2

S.J.A. 61–62.  Williams began working as a full-time administrative aide within DCAR on January 29, 2020.  S.J.A. 62, 70.  Williams' tasks included, among other things, opening, date stamping, sorting, and distributing daily mail, handling daily cash receipts, managing and endorsing checks, and dealing with invoices.  S.J.A. 71.

Williams suffers from asthma, pre-diabetes, and is moderately obese.  J.A. 18. These physical impairments limit his ability to walk long distances, exercise, perform activities in high temperatures, and walk up and down stairs.  *Id.* at 18–19.

Starting a month into his employment, Williams' supervisor began noticing performance issues from him, including returning checks to the wrong addressees, failing to make copies of important documents, and not following proper template form when drafting letters.  S.J.A. 62–63, 78–81.  In April, Williams' supervisor advised him to proofread his completed work and open mail before assisting with deposits to ensure checks are not missed or returned in error.  S.J.A. 83.

Due to the COVID-19 pandemic, Williams first requested an accommodation to telework in May, which DCAR granted.  S.J.A. 64.  Williams began submitting monthly doctor's notes to DCAR requesting that he be allowed to telework for an additional month due to his heightened risk of COVID-19 exposure because of his disabilities.  S.J.A. 64–65, 84–87.  DCAR granted his requests without question until October 2020, at which point MDH's American's with Disabilities Act Amendments Act ("ADAAA") Coordinator communicated to Williams that they could no longer grant this accommodation because it created an undue hardship on the company.  S.J.A. 91.  The Coordinator proposed three alternative accommodations for Williams to choose from, none of which required his

3

presence in the office more than eight hours a week. *Id.* The Coordinator also requested that Williams propose alternative accommodations if her suggestions were not plausible. S.J.A. 92. Williams failed to select an alternative accommodation or engage in further discussion on this topic. S.J.A. 88–92. He continued to telework. J.A. 20, S.J.A. 66.

Williams continued to experience performance issues while teleworking. He, among other things, produced error-ridden work products, failed to make requested revisions to his work, continued to use the incorrect templates to draft letters, did not order supplies in accordance with procedure, and did not respond to emails or answer phone calls within an hour as required by company policy. S.J.A. 94–97. MDH also issued disciplinary action, in the form of a written reprimand, towards Williams for not following procedure regarding returning checks and for failing to complete requisitions to order supplies. S.J.A. 100–02. Williams received an "unsatisfactory" rating on his performance review in which his supervisor explained that Williams did not review examples and templates, as instructed, before completing tasks, became defensive and argumentative upon receiving constructive criticism, and used an improper tone when communicating with co-workers via e-mail. S.J.A. 103–07.

On December 7, 2020, Williams' supervisor notified him that he needs to start working in the office from 8:00 a.m. to 4:30 p.m. every Tuesday. S.J.A. 98. Then, on December 11, 2020, Williams submitted another doctor's note to DCAR. S.J.A. 99. This note, however, stated that Williams could return to work on January 11, 2021, without any mention of him teleworking in the meantime. *Id.* In response, MDH placed Williams on medical leave. J.A. 22. A human resources representative informed Williams that he is to return to the office on January 11, 2021, and that he is to enter sick leave on his timesheet

until then. *Id.* Williams questioned why he needed to use his sick leave when he was teleworking due to his "heightened risk of covid exposure." *Id.* The representative explained that "[m]anagement is going off the information provided in your most recent note" and that employees on medical leave are required to input sick leave into their timesheets. *Id.*

Williams did not return to the office on January 11, 2021, as instructed. J.A. 21, 108, 111. His supervisor informed Williams that because he did not report to the office that day, that he is to return to the office Thursday, January 14 instead. S.J.A. 108. Williams responded after working hours by sending another doctor's note stating he could only telework until February 8, 2021. S.J.A. 108–11.

On January 12, 2021, Williams' supervisor sent him a letter stating that he failed to follow protocol by not returning to the office on January 11 without communicating with management about teleworking. S.J.A. 111.

On January 13, 2021, MDH informed Williams they were terminating his employment because he "lacked the technical skills as well as the judgment necessary for a satisfactory performance" as an administrative aide, failed to follow procedures, and because of his "high error rate" in completing tasks. S.J.A. 67–68, 114–18. MDH placed him on paid administrative leave with his termination effective January 27, 2021. S.J.A. 112, 118.

On August 6, 2021, Williams filed suit against MDH, alleging violations under Section 504 of the Rehabilitation Act of 1973 for failure to accommodate his disability, discrimination, and retaliation. J.A. 5. On September 17, 2021, prior to any discovery, MDH moved to dismiss the complaint, or in the alternative, for summary judgment. S.J.A. 56. In response, Williams filed a declaration pursuant to Rule 56(d), requesting that the

5

court defer ruling on the motion to allow the parties to engage in discovery.  J.A. 16–21.  In considering the parties' exhibits and declarations, the district court treated MDH's motion as one for summary judgment.  J.A. 40–41.  The district court concluded that "it is simply not possible for [Williams] to sufficiently prove" his failure to accommodate claim because of the clear evidence that he could not perform the essential functions of his position even with his requested accommodation and because Williams failed to engage in the interactive process with MDH to identify an alternative accommodation.  J.A. 49.  In considering the discrimination and retaliation claims together, the district court determined that Williams failed to generate a genuine dispute of material fact because he did not "describe specific information not currently in his possession that would call into question any of the material facts" showing that his termination was due to his inadequate work performance.  J.A. 50–51.  As a result, the district court granted summary judgment and denied Williams' request for discovery.  J.A. 53.

## A.

"The Rehabilitation Act prohibits federal agencies from discriminating against its employees on the basis of disability."  *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019).  For the following reasons, we find no error as to the district court's order granting summary judgment on the Section 504 claims.

## 1.

To establish a prima facie claim for failure to accommodate under the Rehabilitation Act, the plaintiff must show that:  "(1) [he] was a qualified person with a disability; (2) the employer had notice of the disability; (3) [he] could perform the essential functions of the

6

position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation." *Id.* at 337. The parties agree that the first two factors are met.

Upon review of the record, we reach the same conclusions as the district court and find clear evidence that Williams could not perform the essential functions of his job even with a reasonable accommodation and that he failed to engage in the interactive process with MDH to identify a reasonable, alternative accommodation, thereby discharging MDH of any liability for its alleged failure to engage in the interactive process. Accordingly, we affirm the grant of summary judgment on this claim.

An employer is not obligated to provide an employee with the exact accommodation he requested, but instead may provide an alternative reasonable accommodation. *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 415 (4th Cir. 2015). Further, an employer need not provide an unreasonable accommodation, such as one that imposes undue financial or administrative hardship on the employer, is unlikely to allow the employee to successfully perform the functions of his job, or one that requires a fundamental modification of the position. *Class v. Townson Univ.*, 806 F.3d 236, 248 (4th Cir. 2015); *Elledge v. Lowe's Home Centers, LLC*, 979 F.3d 1004, 1013 (4th Cir. 2020).

Williams' position required in-office tasks including opening, sorting, and distributing mail; handling hard copies of checks; managing daily cash receipt operations and endorsing checks; and maintaining the card holder activity log. S.J.A. 65, 71–72. Clearly, these are tasks that require at least some presence in the office. For the period Williams teleworked full-time, other employees had to perform essential responsibilities of Williams' job. S.J.A. 65. Williams raises no inference that creates a dispute that he

7

could in fact perform these tasks by teleworking.  Thus, it is undisputed that MDH could not continue to grant his preferred accommodation without incurring administrative hardship and needing to allocate some of his essential tasks to other employees.

Moreover, MDH provided extensive documentation that, even with Williams' requested accommodation in place, he failed to perform in accordance with MDH's expectations.  Such evidence is more than sufficient to demonstrate that he could not perform the essential functions of his position with a reasonable accommodation.  *See Shin v. Univ. of Md. Med. Sys. Corp.*, 369 Fed. Appx. 472, 480–81 (4th Cir. 2020).  To dispute this, Williams only offers self-serving statements that he "always performed [his] job duties in a competent manner and met the Division's reasonable expectations."  J.A. 18.  However, absent objective corroboration, self-serving statements cannot defeat summary judgment.  *Williams v. Giant Food, Inc.*, 370 F.3d 423, 433 (4th Cir. 2004).

Lastly, Williams claims that MDH, by not engaging with him in the interactive process in response to his December and January accommodation requests, failed to reasonably accommodate him.  J.A. 11; Opening Br. 12.  It is true an employer must "engage . . . in an interactive process to identify a reasonable accommodation" for an employee once the employee notifies them of their desire for an accommodation.  *See Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015) (quoting *Wilson v. Dollar General Corp.*, 717 F.3d 337, 346 (4th Cir. 2013)).  However, "an employer who fails to engage in the interactive process will not be held liable if the employee cannot identify a reasonable accommodation that would have been possible."  *Wilson*, 717 F.3d at 347.

8

After MDH informed Williams it could no longer grant his request for 100% telework, Williams refused to engage in discussions about an alternative accommodation. Because of this, MDH had no obligation to continue to offer additional accommodations or grant his requested accommodation. *See Williams v. Va. Polytechnic Inst. & State Univ.*, 451 F. Supp. 3d 467, 477 (E.D. Va. Mar. 31, 2020) (quoting *Maubach v. City of Fairfax*, 2018 WL 2018552, at *5 (E.D. Va. Apr. 30, 2018)).

For these reasons, the district court did not err in granting summary judgment on Williams' failure to accommodate claim.

2.

Because the district court and the parties considered the discrimination and retaliation claims together, we will do the same.

To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff has the burden of showing: "(1) [he] is disabled; (2) [he] was otherwise qualified for the position; and (3) [he] suffered an adverse employment action solely on the basis of [his] disability." *Hannah P.*, 916 F.3d at 342. Retaliation claims under the Rehabilitation Act require that a plaintiff demonstrate: (1) he engaged in a protected activity; (2) his employer took adverse action against him; and (3) there was a causal relationship between the protected activity and the adverse employment action. *Noonan v. Consol. Shoe Co.*, 84 F.4th 566, 574 (4th Cir. 2023) (quoting *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 653 (4th Cir. 2021)).

The parties both agree that Williams is disabled. MDH took an adverse action against Williams by terminating his employment. *See Jacobs*, 780 F.3d at 577. Further,

9

Williams engaged in a protected activity by requesting an accommodation. *See Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 706 (4th Cir. 2001).

Williams claims that MDH employees targeted him when he worked remotely. Specifically, he alleges that his supervisor reprimanded him for mistakes that were minor or a result of unclear instructions or another employee's refusal to respond to his requests for instructions or information. J.A. 20. Poor performance can certainly function as pretext for termination; however, Williams does not deny—but instead justifies—reasons for his mistakes. "[W]hen an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Laing v. Fed. Express Corp.*, 703 F.3d 713, 722 (4th Cir. 2013) (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000)). Williams' own perception that these mistakes were minor, or the result of another employees' unclear instructions, does nothing to undermine MDH's identified, and well-documented, reason for terminating Williams. For this reason, Williams fails to create a genuine dispute of material fact as to whether MDH terminated him solely for his disability, instead of his performance.

Regarding his retaliation claim, Williams argues that the district court did not properly consider how he requested an accommodation on January 11, 2021, and two days later MDH terminated him. While "close temporal proximity weighs heavily in favor of finding a genuine dispute as to causation," that alone cannot defeat summary judgment when an employer identifies a legitimate, nonretaliatory reason for its action. *Jacobs*, 780 F.3d at 575; *S.B. v. Bd. of Educ.*, 819 F.3d 69, 79 (4th Cir. 2016); *see Lewis v. Gibson*, 621

10

Fed. Appx. 163, 165–66 (4th Cir. 2015) (holding that even if the plaintiff could establish a prima facie case for his retaliation claim, "the temporal proximity between his protected activity and termination is, without more, insufficient to create a genuine issue of material fact"). We find that timing alone does not defeat summary judgment on this claim since MDH offered well-supported documentation that it had a non-retaliatory reason for terminating Williams, his poor performance.

Williams also claims that MDH placing him on unpaid medical leave was discriminatory and retaliatory. In reviewing the proffered evidence in the light most favorable to Williams, it shows, at best, a miscommunication between Williams and MDH, or that MDH misinterpreted the doctor's note. Further, Williams has not provided any proof sufficient to create a genuine dispute as to whether MDH placed Williams on medical leave for any reason other than to comply with the doctor's note and accommodate his disability.

For the forgoing reasons, we affirm the district court's order granting summary judgment on Williams' discrimination and retaliation claims.

B.

With respect to Williams' Rule 56(d) motion, we now consider whether the district court erred in ruling on the summary judgment motion before the parties had a chance to engage in discovery.

"Rule 56(d) mandates that summary judgment be denied when the nonmovant 'has not had the opportunity to discover information that is essential to his opposition.'" *Pisano*, 743 F.3d at 931 931 (quoting *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)). However, a court need not allow discovery "when the information sought

11

would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." *Hodgin v. UTC Fire & Security Americas Corp.*, 885 F.3d 243, 250 (4th Cir. 2018) (quoting *Pisano*, 743 F.3d at 931).

According to Williams, the issues of whether MDH intentionally discriminated and retaliated against Williams due to his disability, whether he met the expectations of his job, and whether his supervisor targeted and acted aggressively toward him, are fact intensive. J.A. 17. Accordingly, Williams requested the opportunity to examine relevant MDH employees and to obtain discovery regarding his "job responsibilities, his requests for accommodations, MDH's responses to those requests, and MDH's supposed reasons for terminating [Williams'] employment." *Id.*

Regarding the failure to accommodate claim, the district court determined that "there is ample evidence that Plaintiff was not performing the essential functions of his position, and there is no specific and meaningful proffered evidence to the contrary as to justify discovery." J.A. 49. For the discrimination and retaliation claims, the district court concluded discovery is not necessary there either because Williams failed to describe documents or information not currently available to him which would call into question MDH's reason for terminating Williams. J.A. 51.

The district court did not abuse its discretion by denying Williams' Rule 56(d) motion because Williams failed to demonstrate that the discovery sought would create a genuine issue of material fact.

12

III.

Accordingly, we affirm the district court's order.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*