**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

<hr>

**No. 17-1222**

<hr>

JANET HODGIN; MICHAEL HODGIN, individually and on behalf of all others similarly situated; DIANNA MEY, individually and on behalf of a class of all persons and entities similarly situated; PHILIP CHARVAT, individually and on behalf of a class of all persons and entities similarly situated,

Plaintiffs – Appellants,

and

JAMES G. HOUGH, individually and on behalf of all others similarly situated; KERRY O'SHEA, on behalf of himself, and all others similarly situated; GEORGE CAIN, Individually and On Behalf of All Others Similarly Situated; MERRILL PRIMACK; STEWART MCCAW; NICHOLAS SHREDERS, on behalf of plaintiff and a class; JONATHAN MRAUNAC; VINCENT BRIZGYS; CRAIG CUNNINGHAM; KENNETH MOSER; BILL GARCIA; BRYAN ANTHONY REO; ANTHONY CHERTER; BRUCE RORTY; EDITH BOWLER; KENNETH CLARK; JAMES GILES; JASON BENNETT; SANDRA FAIRLEY; SCOTT DOLEMBA, on behalf of plaintiff and a class; ALLEN BEAVER; DAKOTA DALTON; DIANE ELDER; MICHELLE WAKELEY; KEITH FINKLEA; TODD C. BANK; NEWTON VAUGHN, an individual; STEWART N. ABRAMSON; LAWRENCE TARIZZO, individually and on behalf of all others similary situated; DARREN R. NEWHART; BRANDON FRAZER; YVETTE CORRALEZ-ESTRADA-DIAZ; JOHN GERACI; SHANE MEYERS; MATTHEW BARGER; JEFFERY WAGY,

Plaintiffs,

v.

UTC FIRE & SECURITY AMERICAS CORP., INC.; HONEYWELL INTERNATIONAL, INCORPORATED,

Defendants – Appellees,

and

VERSATILE MARKETING SOLUTIONS, INC., d/b/a VMS Alarms, d/b/a VMS Alliance Security, d/b/a Alliance Home Protection; LISA HADDAD, d/b/a CCA Services LLC, d/b/a Alarmillinois.com, d/b/a Alarmindiana.com; DOES 1-10; HOME SECURITY SOLUTIONS, INC; JOHN AND JANE DOES 1-10; BRIAN FABIANO; RYAN J. NEWCOMER; DOES 1-25; 2 GIG TECHNOLOGY; JASJIT, a/k/a Jay Gotra; SECURE 1 SYSTEMS; MIKE MAVARRO; UTC FIRE AND AMERICA'S CORPORATION; KATHY MCDONALD, a/k/a Kathy Mardaresco; THE ALTITUDE GROUP, LLC, d/b/a Core Home Security; KEVIN BRODY; TRAN CONSULTING GROUP, LLC; UNITED TECHNOLOGIES CORPORATION; MONITRONICS INTERNATIONAL, INC.; ALLIANCE SECURITY, INC., d/b/a AH Security, Inc, formerly doing business as Versatile Marketing Solutions, Inc., d/b/a VMS Alarms; ALLIANCE SECURITY LLC, a Delaware limited liability company; ISI ALARMS NC INC., a North Carolina corporation; KEVIN KLINK; JAYSON WALLER; JASJIT GOTRA, a/k/a Jay Gotra, individually and as an Officer of Versatile Marketing Solutions, Inc.; ALLIANCE SECURITY; JASJIT GOTRA, individually and as an officer of Versatile Marketing Solutions, Inc.; VERSATILE MARKETING SOLUTIONS, INC., d/b/a VMS Alarms, d/b/a VMS, d/b/a Alliance Security, d/b/a Alliance Home Protection, a California corporation,

   Defendants,

COMPLIANCEPOINT, INC.,

   Party-in-Interest,

------------------------------

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; NATIONAL ASSOCIATION OF MANUFACTURERS; SECURITY INDUSTRY ASSOCIATION,

   Amici Supporting Appellees.

---

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.  John Preston Bailey, District Judge.  (1:13-md-02493-JPB-JES)

---

Argued:  January 24, 2018       Decided:  March 14, 2018

---

Before DUNCAN, KEENAN, and, DIAZ, Circuit Judges.

---

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judges Keenan and Diaz joined.

---

**ARGUED:** Ryan McCune Donovan, BAILEY & GLASSER, LLP, Charleston, West Virginia, for Appellants. Rebecca J. Wahlquist, SNELL & WILMER, LLP, Los Angeles, California, for Appellee UTC Fire & Security Americas Corp., Inc. Lauri Anne Mazzuchetti, KELLEY DRYE & WARREN, LLP, Parsippany, New Jersey, for Appellee Honeywell International, Incorporated. **ON BRIEF:** John W. Barrett, Jonathan R. Marshall, J. Zak Ritchie, BAILEY & GLASSER LLP, Charleston, West Virginia; Beth E. Terrell, TERRELL MARSHALL LAW GROUP, PLLC, Seattle, Washington, for Appellants. Glenn T. Graham, KELLEY DRYE & WARREN LLP, Parsippany, New Jersey, for Appellee Honeywell International, Incorporated. Gordon H. Copland, STEPTOE & JOHNSON PLLC, Bridgeport, West Virginia, for Appellee UTC Fire & Security Americas Corp., Inc. Kate Comerford Todd, Steven P. Lehotsky, UNITED STATES CHAMBER LITIGATION CENTER, Washington, D.C.; Thomas R. McCarthy, Bryan K. Weir, CONSOVOY MCCARTHY PARK PLLC, Arlington, Virginia, for Amici Curiae.

---

DUNCAN, Circuit Judge:

Plaintiffs-Appellants sued UTC Fire & Security Americas Corporation, Inc., and Honeywell International, Inc., under the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227. Although Plaintiffs did not allege that UTC and Honeywell directly violated the TCPA, they claimed that both companies were vicariously liable for illegal calls made by telemarketers promoting UTC and Honeywell products. UTC and Honeywell separately moved for summary judgment before the end of discovery. Plaintiffs opposed the motions and moved, under Federal Rule of Civil Procedure 56(d), to postpone the district court's ruling until discovery closed. The district court denied Plaintiffs' Rule 56(d) motion and granted UTC and Honeywell summary judgment.

We affirm the district court's denial of the Rule 56(d) motion because Plaintiffs failed to show that they did not have an opportunity to discover specific evidence that was essential to their opposition to summary judgment. We also affirm the court's grant of summary judgment because Plaintiffs failed to proffer more than a scintilla of evidence to support the conclusion that UTC and Honeywell were vicariously liable for the telemarketers' alleged TCPA violations.

I.

Because the facts pertaining to UTC and Honeywell are different, we discuss them separately. We begin with UTC.

A.

During the relevant period, UTC manufactured home-security systems. It sold the systems to distributors, which resold them to approximately 28,000 retailers. Once UTC sold systems to a distributor, the distributor took full title to the product. Accordingly, UTC did not receive any direct proceeds from a product's resale to a retailer or consumer.

Versatile Marketing Solutions, Inc., ("VMS") was one of the retailers that purchased UTC's home-security systems from a distributor. VMS sold the systems directly to consumers as part of a security package that included a subscription to monitoring services. It used telemarketing to sell these packages.

VMS did not have a direct purchasing relationship with UTC; it only purchased systems from UTC's distributors. However, VMS had a contractual relationship with UTC that allowed VMS to use UTC's trademarks in limited ways. The contractual relationship began in 2010 when UTC acquired GE Security, Inc., which had entered into a "dealer agreement" with VMS the previous year. UTC continued to honor the agreement after the acquisition.

The dealer agreement permitted VMS to hold itself out as an "Authorized GE Security Dealer." J.A. 802. However, the agreement prohibited VMS from using the GE Security trademark in "its corporate or business name, or within its telephone greeting, letterhead, stationary, identification badges, telemarketing scripts or direct marketing material, or promotional items." J.A. 802. The agreement also stated that the parties did not intend "to create an employment, agency, franchise or other relationship." J.A. 800. Additionally, the contract required VMS to comply with all applicable laws and

5

regulations. Finally, the agreement entitled VMS to rebates if it purchased a minimum amount of GE Security products each year.

In 2011, UTC began to receive complaints about VMS's telemarketing practices. On August 24, 2011, for example, an individual complained that VMS had called his residence selling GE Security products even though his number was listed on the national Do-Not-Call Registry. And, in November 2011, UTC received at least two complaints stating that VMS was using robocalls to sell GE Security products.

UTC had a system for responding to complaints about its authorized dealers. This process involved contacting the complainant to explain that UTC was a manufacturer that sold exclusively to distributors and never marketed its products directly to consumers and that none of the retailers that sold UTC products were authorized to hold themselves out as representatives of UTC or GE Security. Then, UTC would ask the complainant for identifying information about the telemarketer. If the complainant provided sufficient information to identify which authorized dealer made the relevant call, UTC would relay the complaint to that dealer and take appropriate remedial action.

UTC followed this process when it received complaints about VMS, following-up with complainants and informing VMS of the grievances lodged against the telemarketer. UTC also required the head of VMS to attend an ethics presentation during which UTC reminded authorized dealers that they were prohibited from representing themselves as UTC's or GE Security's agents and were contractually obligated to comply with all applicable telemarketing laws. Finally, UTC terminated VMS's dealer agreement in April

6

2012 because it determined that VMS's misconduct was damaging UTC's reputation and UTC was in any event likely to lose VMS's business to a competitor.

B.

Like UTC, Honeywell manufactured hardware for home-security systems. Through a wholly-owned subsidiary called ADI Global Distribution, Honeywell sold its security products to thousands of retailers, which in turn resold them to consumers. Some, but not all, of these retailers had "sales agreements" with Honeywell that entitled them to purchase products from ADI at a favorable rate, guaranteed them a minimum supply of products every month, and allowed them to use Honeywell's logo for limited purposes.

ISI Alarms NC, Inc., was a retailer. It purchased Honeywell products from ADI and resold them to consumers as part of a security package that included a subscription to monitoring services. ISI used telemarketing to sell these packages.

From 2005 to 2012, ISI purchased Honeywell products without a sales agreement. During this time, Honeywell received several complaints that ISI was making aggressive telemarketing calls in which its employees represented themselves as Honeywell agents. The complaints cited to by Plaintiffs, however, did not allege that ISI was using prerecorded messages or calling numbers on the Do-Not-Call Registry. Honeywell responded to these complaints by reminding ISI that it could not hold itself out as a Honeywell representative.

7

On April 11, 2012, ISI executed a sales agreement with Honeywell.[1] The agreement set the prices ADI could charge ISI for security products and entitled ISI to rebates if it bought a minimum amount of Honeywell equipment. It also permitted ISI to use the Honeywell logo in its marketing materials if ISI complied with certain conditions. Specifically, the agreement prohibited anyone associated with ISI from making "any representation, whether verbal, written or otherwise, that they [were] a Honeywell employee or an agent of Honeywell or that [ISI] [had] any official association or affiliation with Honeywell." J.A. 706.

Between May and June 2012, Honeywell received new complaints about ISI's telemarketing practices. Specifically, these complaints accused ISI of making aggressive telemarketing calls under the name ISI/Honeywell, using prerecorded calls to solicit business, and ignoring requests to be placed on the company's no-call list.

In response to these complaints, Honeywell reiterated that ISI could not represent itself as a Honeywell agent and opened an investigation into the other allegations. During the summer of 2012, Honeywell's legal team called ISI periodically to learn more about the complaints, and two Honeywell executives visited ISI's headquarters to further investigate. Honeywell also explained to ISI that the complaints about ISI's telemarketing practices had placed their business relationship in jeopardy. ISI insisted that it was not responsible for any misconduct throughout the investigation. Instead, it claimed that its competitors were impersonating ISI employees during illegal calls to hurt ISI's reputation.

---

[1] The contract provided that "[t]he term of this Agreement will begin on February 15, 2012." J.A. 790. But it was not signed by both parties until April 11, 2012.

8

Despite its refusal to accept responsibility for any misconduct, ISI hired a consulting firm to ensure that it was complying with applicable telemarketing laws and regulations. But this did not solve the problem. Honeywell continued to receive complaints about ISI throughout the fall of 2012. In January 2013, Honeywell terminated its sales agreement with ISI "due to the issues with telemarketing and . . . growing issues with credit." J.A. 331.

## II.

On December 19, 2013, the Multidistrict Litigation ("MDL") Panel consolidated seven class-action lawsuits alleging that ISI, VMS and other home-security retailers violated the TCPA by making illegal telemarketing calls and transferred the consolidated case to the Northern District of West Virginia. On February 28, 2014, Plaintiffs filed a Master Consolidated Complaint, which they twice amended. In relevant part, the Second Amended Master Consolidated Complaint claimed that ISI and VMS violated § 227(b) of the TCPA by making calls that used a prerecorded message and § 227(c) by calling numbers on the national Do-Not-Call Registry. It also alleged that UTC and Honeywell were vicariously liable for these violations because the manufacturers benefited from the calls and either authorized or ratified them.

Over the next year, the parties engaged in discovery. Before discovery closed, however, the district court stayed the MDL until the Supreme Court decided two cases pending before it: one involving class-action standing and the other involving TCPA

9

liability.[2]  Those cases were decided on June 6, 2016.  Two days later, the district court lifted the stay and scheduled a status conference to discuss how the rest of discovery should proceed.

At the status conference, which convened on July 28, 2016, UTC and Honeywell sought permission to file motions for summary judgment on the ground that they were not vicariously liable for ISI's and VMS's alleged misconduct.  Plaintiffs objected that such motions would unnecessarily delay the final resolution of the case because UTC had raised and lost a similar motion before its lawsuit was consolidated into the MDL.  The court granted UTC's and Honeywell's requests.  It also entered a scheduling order setting the close of discovery for April 28, 2017.

On August 16, 2016, UTC filed its summary-judgment motion.  Honeywell's motion followed two weeks later.  On September 20, 2016, Plaintiffs responded to both motions and filed a declaration, pursuant to Rule 56(d), requesting that the district court defer ruling on summary judgment until the close of discovery.  The Rule 56(d) declaration acknowledged that Plaintiffs had previously deposed UTC and Honeywell executives but claimed that additional depositions were "critical to fully exploring the [vicarious-liability] issues raised in the summary judgment motions" because UTC and Honeywell had produced thousands of new documents since their initial depositions.  J.A. 725.3 at ¶ 8.  According to the declaration, additional depositions would "allow effective cross-examination regarding the [new] documents" and would "produce evidence directly from

_____

[2]Respectively, these cases were *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

[UTC's and Honeywell's] representatives, and not filtered through potentially self-serving documents." J.A. 725.3 at ¶ 8.

On December 22, 2016, the district court denied Plaintiffs' request to postpone ruling on summary judgment for two reasons. First, it found that Plaintiffs did not attempt to schedule a single deposition in the three months between June 8, 2016, when the stay was lifted on the MDL, and September 20, 2016, when their responses to the summary-judgment motions were due. *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 528–29 (N.D. W. Va. 2016). The district court concluded that Plaintiffs' inaction demonstrated that the depositions were not essential to opposing the summary-judgment motions. *Id.* at 529. Second, the district court found that Plaintiffs' Rule 56(d) declaration did not identify "any evidence that would be sought [in the depositions] that could create a genuine issue of material fact." *Id.*

The district court then granted summary judgment in favor of UTC and Honeywell. The court determined that Plaintiffs failed to genuinely dispute that UTC and Honeywell did not authorize or ratify VMS's and ISI's purported TCPA violations. *Id.* at 527–28. Therefore, the court concluded that UTC and Honeywell were not vicariously liable for the telemarketers' alleged misconduct as a matter of law. *Id.*

This appeal timely followed.

11

III.

On appeal, Plaintiffs challenge the district court's denial of their Rule 56(d) motion and grant of summary judgment in favor of UTC and Honeywell. For the following reasons, we reject Plaintiffs' challenges and affirm the district court.

A.

To begin, we affirm the district court's denial of Plaintiffs' Rule 56(d) motion to postpone a ruling on summary judgment until the end of discovery. Rule 56(d) provides that a district court must defer ruling on a summary-judgment motion if the party opposing the motion "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The rule "mandates that summary judgment be [postponed] when the nonmovant 'has not had the opportunity to discover information that is essential to his opposition.'" *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (quoting *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)). However, a court may deny a Rule 56(d) motion "when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." *Id.* "We review a district court's denial of a Rule 56(d) motion for abuse of discretion." *Id.*

In this case, the district court did not abuse its discretion by denying Plaintiffs' Rule 56(d) motion for two reasons. First, Plaintiffs had a reasonable opportunity to depose UTC and Honeywell regarding the nature of their relationship with VMS and ISI. Plaintiffs' Rule 56(d) declaration acknowledged that they had deposed both defendants at an earlier

12

stage of discovery. Moreover, Plaintiffs had three months between the district court's order lifting the stay in the consolidated case and the deadline for their opposition to UTC's and Honeywell's summary-judgment motions. This gap provided Plaintiffs with a reasonable amount of time to schedule the depositions they claim were essential to their responses. Plaintiffs do not offer a persuasive explanation for failing to do so.

Instead, Plaintiffs argue that they were not obligated to schedule any depositions during the relevant three-month period because, according to the district court's latest scheduling order, discovery would not close until April 28, 2017--several months after their opposition was due. This argument misunderstands the Rule 56(d) inquiry. The Federal Rules of Civil Procedure allow a party to move for summary judgment before the end of discovery. Fed. R. Civ. P. 56(b) ("[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery."). However, to protect the nonmovant from a premature grant of summary judgment, Rule 56(d) requires a court to defer ruling on a summary-judgment motion until the nonmovant has had a reasonable opportunity to discover information that is essential to its response. *See Pisano*, 743 F.3d at 931. Thus, the relevant question under Rule 56(d) is not whether discovery remained open at the time that the summary-judgment motion was filed, but whether the party seeking to defer a ruling on that motion had a reasonable opportunity to conduct essential discovery. As we have explained, Plaintiffs had such an opportunity.

Second, Plaintiffs' Rule 56(d) declaration does not identify any specific information that would create a genuine dispute of material fact. The declaration states that additional depositions of UTC and Honeywell would "allow effective cross-

13

examination regarding [newly-discovered] documents" and would "produce evidence directly from [UTC's and Honeywell's] representative, and not filtered through potentially self-serving documents." J.A. 725.2 at ¶ 8. These generic statements merely parrot the potential benefits of any deposition. The statements do not identify any specific evidence that Plaintiffs might discover in the depositions or explain how that evidence would create a triable issue regarding UTC's and Honeywell's vicarious liability for VMS's and ISI's alleged TCPA violations. Thus, Plaintiffs failed to demonstrate that the information they sought to attain in the depositions would create a genuine dispute of material fact.

For these reasons, we hold that the district court did not abuse its discretion by denying Plaintiffs' Rule 56(d) motion.

B.

Plaintiffs also challenge the district court's determination that UTC and Honeywell were entitled to summary judgment, arguing that there was a triable issue regarding UTC's and Honeywell's vicarious liability for VMS's and ISI's alleged TCPA violations. Before the district court, Plaintiffs argued that UTC and Honeywell were vicariously liable for the purported misconduct under three theories: ratification, actual authority and apparent authority. On appeal, however, Plaintiffs rely solely on a ratification theory. Specifically, Plaintiffs argue that there is a genuine dispute over whether UTC and Honeywell ratified the telemarketers' alleged violations of § 227(b) and § 227(c) of the TCPA by failing to repudiate their misconduct, rewarding the telemarketers for their illegal practices and accepting benefits that stemmed from the violations. Because Plaintiffs fail to proffer more

14

than a scintilla of evidence to support these allegations, we reject their challenge and affirm the district court.[3]

Our analysis proceeds in two steps. First, we discuss the legal standards that govern vicarious liability in the context of TCPA violations. We then address the merits of Plaintiffs' challenge to the district court's grant of summary-judgment.

1.

The Federal Communications Commission (the "FCC") interprets the TCPA to allow vicarious liability for violation of § 227(b) and § 227(c).[4] *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013). Section 227(b) makes it unlawful "for any person . . . to initiate any telephone call to any residential telephone line using an

---

[3]Plaintiffs also argue that the district court applied the wrong legal standard to determine whether they were vicariously liable for the telemarketers' purported TCPA violations. Specifically, Plaintiffs argue that the court erroneously determined that an entity can only ratify the acts of another if the two had a preexisting principal-agent relationship. We need not address this argument for two reasons. First, although the district court cited a nonprecedential case for the proposition that ratification requires a preexisting agency relationship, it did not in fact apply that rule in its analysis. *See Monitronics*, 223 F. Supp. 3d at 526–27 (citing *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 586 (S.D. Ohio 2016)). Instead, the court found that UTC and Honeywell proffered significant evidence demonstrating that they expressly repudiated VMS's and ISI's purported misconduct and that Plaintiffs failed to genuinely dispute that evidence. Second, "we may affirm [a grant of summary judgment] on any ground that the law and the record permit." *Thigpen v. Roberts*, 468 U.S. 27, 29–30 (1984). Accordingly, even if the district court applied the wrong legal standard, we may affirm its decision if we conclude that UTC and Honeywell were entitled to summary judgment under the correct standard, which we do.

[4]The parties in this case accept the FCC's interpretation and we have no reason to question it. *See Campbell-Ewald Co.*, 136 S. Ct. at 674.

artificial or prerecorded voice . . . unless the call [falls under one of several exceptions that do not apply here.]" 47 U.S.C. § 227(b)(1)(B). Section 227(c) prohibits "any person from making or transmitting a telephone solicitation to [a] telephone number [on the national Do-Not-Call Registry.]" *Id.* at § 227(c)(3)(F); *see also* 47 C.F.R. § 64.1200 (implementing § 227(c)(3)(F)).

According to the FCC, vicarious liability under the TCPA is governed by the federal common law of agency, "including not only formal agency, but also principles of apparent authority and ratification." *Dish Network, LLC*, 28 FCC Rcd. at 6584. To determine these common law principles, courts have traditionally looked to the Restatement of Agency. *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 752 (1989); *see also Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 260 (4th Cir. 1997).

The only agency principle at issue in this case is ratification. The Restatement provides that "[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01(1) (2006). A party "may ratify an act by failing to object to it or to repudiate it," *id.* at § 4.01 cmt. f., or by "receiving or retaining [the] benefits it generates," *id.* at § 4.01 cmt. g. However, a party "is not bound by a ratification made without knowledge of material facts involved in the original act when the [party] was unaware of such lack of knowledge." *Id.* at § 4.06.

16

2.

UTC and Honeywell are entitled to summary judgment because Plaintiffs failed to establish a triable issue regarding UTC's and Honeywell's ratification of the alleged TCPA violations. We review the district court's grant of summary judgment de novo. *See Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pr. 56(a). Although we view the evidence in the light most favorable to the nonmoving party, that party must produce evidence that goes beyond "[c]onclusory or speculative allegations" and relies on more than "a mere scintilla of evidence" to withstand summary judgment. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir.1999)) (internal quotation marks omitted).

In this case, Plaintiffs argue that UTC and Honeywell were not entitled to summary judgment because there was a genuine dispute regarding their ratification of VMS's and ISI's alleged TCPA violation. Specifically, Plaintiffs contend that UTC and Honeywell failed to repudiate the telemarketers' practices after they learned that the telemarketers were using prerecorded messages and calling numbers on the Do-Not-Call Registry to promote home-security equipment. Plaintiffs contend that, instead, UTC and Honeywell encouraged the purported misconduct by rewarding the telemarketers for their illegal practices. Plaintiffs also argue that UTC and Honeywell ratified the telemarketers' alleged TCPA violations by accepting the benefits of the illegal calls. These arguments, however, fail to create a genuine dispute of material fact because they are unsupported by record

17

evidence and amount to little more than speculative allegations. *See Thompson*, 312 F.3d at 649.

i.

Plaintiffs failed to rebut the evidence proffered by UTC and Honeywell demonstrating that they repudiated the telemarketers' alleged TCPA violations. To begin, the record shows that UTC repudiated VMS's alleged misconduct. When UTC received complaints about VMS, UTC followed-up with the complainants to explain that VMS was not its agent. In addition, UTC required the head of VMS to attend an ethics presentation during which UTC emphasized that GE Security dealers were prohibited from representing themselves as UTC's or GE Security's agents and were contractually obligated to comply with all applicable telemarketing laws. Finally, UTC terminated its dealer agreement with VMS at least in part because it determined that VMS's aggressive telemarketing practices were damaging UTC's reputation.

Similarly, the record shows that Honeywell repudiated ISI's alleged misconduct. A few months after Honeywell entered into a sales agreement with ISI it began to receive complaints that ISI used prerecorded messages to make sales and frequently called telephone numbers on the Do-Not-Call Registry. Honeywell responded by opening an investigation into the alleged misconduct and informing ISI that its telemarketing practices had placed their business relationship in jeopardy. Throughout the investigation, ISI assured Honeywell that it was not involved in any wrongdoing and that it would comply with all applicable laws in the future. Honeywell reasonably relied on these assurances for

18

several months because ISI hired a compliance company to ensure that its telemarketing practices did not violate any laws or regulations. Nonetheless, Honeywell ultimately terminated its sales agreement with ISI because, among other things, Honeywell continued to receive complaints about ISI's telemarketing practices.

Plaintiffs do not rebut the evidence proffered by UTC and Honeywell.

ii.

Next, Plaintiffs' argument that UTC and Honeywell rewarded VMS and ISI for violating the TCPA is based on speculative allegations and ignores one of the elements of ratification. Under their contracts with UTC and Honeywell, VMS and ISI were entitled to rebates if they purchased a minimum amount of home-security products each year. Plaintiffs argue that these rebates rewarded VMS and ISI for violating the TCPA because the telemarketers could only afford to make the required purchases if they sold large quantities of home-security products and they could only sell such large quantities by using prerecorded messages and calling numbers on the Do-Not-Call Registry. This argument is unavailing for two reasons.

First, the connection between the rebates and the purported TCPA violations is so attenuated that Plaintiffs' claim that UTC and Honeywell intended the rebates to reward such misconduct amounts to mere speculation. *See Thompson*, 312 F.3d at 649 (holding that "[c]onclusory or speculative allegations" are insufficient to establish a genuine dispute of fact). Second, Plaintiffs' argument ignores a key element of ratification, which is that a party "is not bound by a ratification made without knowledge of material facts" or

19

"knowledge of facts that would have led a reasonable person to investigate further." *See* Restatement (Third) of Agency § 4.06 & cmt. d. Here, Plaintiffs do not cite any evidence showing that UTC and Honeywell knew that the telemarketers' high sales numbers were fueled by robocalls and calls to the Do-Not-Call Registry when they signed the dealer and sales agreements that entitled the telemarketers to the rebates in question.[5]

### iii.

Finally, Plaintiffs' argument that UTC and Honeywell benefitted from the telemarketers' alleged TCPA violations is based entirely on conjecture. It is undisputed that UTC and Honeywell did not receive any direct proceeds from the telemarketers' sale of home-security products to consumers. Nevertheless, Plaintiffs argue that UTC and Honeywell benefitted from the telemarketers' use of robocalls and their calls to numbers on the Do-Not-Call Registry because these aggressive telemarketing practices increased the number of home-security products the telemarketers sold, which in turn caused them to buy more goods from UTC and Honeywell. This argument, however, fails for the simple reason that Plaintiffs failed to proffer any evidence supporting their allegation that illegal telemarketing practices increased VMS's and ISI's sales of home-security products.

---

[5]Although Plaintiffs cited evidence demonstrating that Honeywell received complaints about ISI's aggressive telemarketing practices before executing the sales agreement on April 11, 2012, those complaints did not allege that ISI was using prerecorded messages or calling numbers on the Do-Not-Call Registry.

IV.

In sum, we hold that the district court did not abuse its discretion by denying Plaintiffs' Rule 56(d) motion to defer ruling on summary judgment and that UTC and Honeywell were entitled to summary judgment because there was no triable issue regarding their purported ratification of VMS's and ISI's alleged TCPA violations. For these reasons, the judgment of the district court is

*AFFIRMED.*