**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2191**

JOHN WALTER RIGGINS, Administrator of the Estate of NELLIE DONITHAN
RIGGINS,

        Plaintiff – Appellant,

v.

SSC YANCEYVILLE OPERATING COMPANY, LLC, d/b/a Brian Health Center
& Rehabilitation/Yanceyville,

        Defendant – Appellee,

and

SAVASENIORCARE, LLC; LIVING CENTERS - SOUTHEAST, INC.,

        Defendants.

Appeal from the United States District Court for the Middle District of North Carolina, at
Greensboro.  N. Carlton Tilley, Jr., Senior District Judge. (1:16-cv-01213-NCT-JLW)

Argued:  October 29, 2019                                  Decided:  January 15, 2020

Before GREGORY, Chief Judge, and WYNN and THACKER, Circuit Judges.

Affirmed by unpublished opinion. Judge Wynn wrote the opinion in which Chief Judge
Gregory and Judge Thacker joined.

**ARGUED:** Jonathan Paul Ward, PINTO COATES KYRE & BOWERS, PLLC, Greensboro, North Carolina, for Appellant. Michael E. Phillips, HAGWOOD AND TIPTON, PC, Ridgeland, Mississippi, for Appellee. **ON BRIEF:** Paul D. Coates, Adam L. White, PINTO COATES KYRE & BOWERS, PLLC, Greensboro, North Carolina, for Appellant. Carl Hagwood, Jonathan Williams, HAGWOOD AND TIPTON, PC, Hillsborough, North Carolina, for Appellee.

WYNN, Circuit Judge:

In this medical malpractice case, Plaintiff-Appellant John Walter Riggins, administrator of the estate of Nellie Riggins ("Ms. Riggins"), appeals rulings of the U.S. District Court of the Middle District of North Carolina (1) granting summary judgment in favor of Defendant-Appellee SSC Yanceyville Operating Company, LLC on the grounds that Plaintiff failed to offer sufficient causation testimony and (2) striking portions of a supplementary affidavit submitted by Plaintiff's expert, Dr. Carol Rupe, as inconsistent with her prior deposition testimony. For the reasons set forth below, we conclude the district court did not err in granting summary judgment and did not abuse its discretion in striking conflicting portions of the affidavit.

Accordingly, we affirm the district court on all issues.

I.

A.

In 2007, Ms. Riggins, who suffered from Alzheimer's disease, entered Defendant's nursing facility as a patient. Seven years later, while still in Defendant's care, Ms. Riggins was diagnosed with oropharyngeal dysphagia, a condition which causes difficulty swallowing liquids and foods. Because individuals with this disorder may aspirate (inhale) thin liquids and foods, Ms. Riggins was prescribed "nectar-thickened liquids." J.A. 14.

On September 3, 2014, Ms. Riggins experienced a sudden shortness of breath. Defendant's employees conducted a chest X-ray, which indicated Ms. Riggins was suffering congestive heart failure. Ms. Riggins was rushed to the emergency room at Danville Regional Medical Center. Upon arrival, a physician determined that Ms. Riggins

3

"was septic due to possible pneumonia or urinary tract infection." J.A. 13. Further X-rays revealed bibasilar atelectasis (partial collapse of the lower lungs). Ms. Riggins's family then placed her on comfort care only, opting to forego heroic treatment. Ms. Riggins passed away from sepsis on September 8, 2014.

B.

Following Ms. Riggins's death, Plaintiff filed a medical malpractice claim under diversity jurisdiction, alleging that Defendant maintained Ms. Riggins on a thin liquid diet, causing her to aspirate thin liquids, develop aspiration pneumonia, become septic, and die. Plaintiff put forward Dr. Carol Rupe as a medical causation expert. Dr. Rupe's written report stated it was her opinion "within a reasonable degree of medical certainty" that Defendant breached its standard of care to Ms. Riggins and that this breach in turn caused Ms. Riggins's death. J.A. 133. Specifically, Dr. Rupe stated:

> It is my opinion within a reasonable degree of medical certainty that the care providers at the Brian Center did breach the standard of care given to Ms. Nellie Riggins . . . . [I]t is my opinion that more likely than not the breach in the standard of care by the staff at The Bryan [sic] Center in not placing thickener in Ms. Riggins['s] thin liquids caused Ms. Nellie Riggins to suffer an acute aspiration on September 3, 2014 which caused the development of an Aspiration Pneumonia which ultimately led to her demise.

J.A. 133.

At her deposition, however, Dr. Rupe offered varying answers as to whether Ms. Riggins aspirated thin liquids. Dr. Rupe stated that Ms. Riggins more likely than not aspirated thin liquids but declined to explain how certain she was in that opinion:

Q: . . . [Y]our opinion is she aspirated?

A: Correct.

4

Q: You don't really know why? You can't say to a reasonable degree of certainty what she aspirated on, can you?

A: More likely than not with not having any evidence that her fluids were being thickened, it would be a thin liquid, would be the more likely than not candidate for her aspirating.

J.A. 72–73.

Q: Now, help me understand, your opinion is that on September the 3rd at some time in the late afternoon Ms. Riggins aspirated?

A: Correct.

Q: We don't know on what?

A: No, we don't because, to my knowledge, the lunch wasn't even listed in the tracker for the day.

J.A. 79. Dr. Rupe further acknowledged that Ms. Riggins could have aspirated several things, including snacks, fluid, foods, or her own secretions:

Q: Okay. But it is your opinion that on September 3rd of 2014, Ms. Riggins aspirated on either lunch or having been provided liquids that were thin, not thickened?

A: Correct. Or a snack that she received because she was getting some snacks in between meals, also.

J.A. 71–72.

Q: You believe that Ms. Riggins aspirated, but you don't know on -- on what?

A: I don't know which fluid, no, or food.

Q: Or food. Okay. Can residents aspirate on foods that are pureed?

A: They can. It's less likely, but they can.

Q: And I think we -- we touched on this. They can also aspirate on their own secretions?

5

A: Correct.

J.A. 102. When asked again to weigh the potential items aspirated, Dr. Rupe identified thin liquids as the most likely candidate, but agreed with Defendant's counsel that she could not make that statement to a reasonable degree of medical certainty:

> Q: So - - the last sentence in your report says ["]the Brian Center in not placing thickener in Ms. Riggins' thin liquids caused Ms. Nellie Riggins to suffer an acute aspiration on September 3rd, 2014, which caused the development of an aspiration pneumonia which ultimately led to her demise,["] that statement's not entirely correct because you don't know what caused her to aspirate?
>
> A: Again, it's whatever she was taking in - -
>
> Q: Food or fluid? You've already said it twice.
>
> A: True, true. But the most likely candidate would be the liquids.
>
> Q: But you can't say that to a reasonable degree of medical certainty?
>
> A: No.

J.A. 107–08. Dr. Rupe's refusal to state her opinion to a reasonable degree of medical certainty was then repeated for the court reporter with no objection. At the conclusion of Defendant's questioning, Plaintiff's counsel did not ask Dr. Rupe any questions. Although Dr. Rupe was required to review and, if necessary, correct her deposition testimony pursuant to North Carolina Rule of Civil Procedure 30(e), she made no such corrections. N.C. R. Civ. P. 30(e).

Defendant subsequently moved for summary judgment, arguing Plaintiff could not show, by way of Dr. Rupe's expert testimony, that Defendant's conduct caused Ms. Riggins's injury to "a reasonable degree of medical certainty." Dist. Ct. Dkt. No. 42 at 3.

6

In his opposition to Defendant's motion for summary judgment, Plaintiff submitted an affidavit from Dr. Rupe stating, in relevant part:

> 7.     Certainty means one hundred percent, or close to it, to me. Without having witnessed Ms. Riggins actually aspirating, I would never say I was certain as to what she aspirated.
>
> 8.     During my deposition, I stated both that it was more likely than not that Ms. Riggins aspirated on a thin liquid and that I could not say with certainty that she aspirated on a thin liquid. These opinions are within a reasonable degree of medical causation and probability.
>
> 9.     Based on my review of the records in this case, it was and remains my opinion that Ms. Riggins, more likely than not, aspirated on a thin liquid. It is my further opinion that this aspiration led to aspiration pneumonia and Ms. Riggins's death. These opinions are within a reasonable degree of medical causation and probability.

J.A. 165.   Defendant moved to strike this affidavit as contradicting Dr. Rupe's prior deposition testimony.  The district court agreed and struck portions of Dr. Rupe's affidavit constituting "bona fide inconsistencies with her deposition testimony, such as when she characterizes her opinion that it is more likely than not the thin liquids that caused Riggins to aspirate as being within a reasonable degree of medical causation and probability." *Riggins v. SSC Yanceyville Operating Co., LLC*, No. 1:16-CV-1213, 2018 WL 4374929, at *5 (M.D.N.C. Sept. 13, 2018).  The district court also granted Defendant's summary judgment motion, finding Dr. Rupe's testimony absent the affidavit did not rise to the degree of medical certainty required for the testimony to reach the jury. *Id.* at *4–5.

Plaintiff timely appealed, arguing that the district court (1) erred in granting summary judgment because Dr. Rupe's testimony proffered sufficient causation evidence and (2) abused its discretion in striking portions of Dr. Rupe's affidavit as contradictory.

7

Appellant's Br. at 1, 6. We hold that the district court properly granted summary judgment and did not abuse its discretion in striking conflicting portions of the affidavit.

## II.

Because we conclude below that the district court properly struck portions of Dr. Rupe's affidavit, we first analyze whether the district court properly granted summary judgment on the record absent those stricken portions. We find that it did.

We review summary judgment decisions de novo. *Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 252 (4th Cir. 2018). Summary judgment is only appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). While we view evidence in the light most favorable to the nonmoving party, more than a scintilla of evidence is required and mere "[c]onclusory or speculative allegations" are insufficient to withstand summary judgment. *Hodgin*, 885 F.3d at 252 (alteration in original) (quoting *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002)).

When a federal court is exercising diversity jurisdiction, "the substantive elements of a medical malpractice suit . . . are all questions to be determined by state law." *Fitzgerald v. Manning*, 679 F.2d 341, 346 (4th Cir. 1982). In North Carolina, a medical malpractice plaintiff must offer evidence establishing: "(1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) [that] the injuries suffered by

8

the plaintiff were proximately caused by such breach; and (4) the damages resulting to the plaintiff." *Hawkins v. Emergency Med. Physicians of Craven Cty., PLLC*, 770 S.E.2d 159, 162 (N.C. Ct. App. 2015) (quoting *Purvis v. Moses H. Cone Mem'l Hosp. Serv. Corp.*, 624 S.E.2d 380, 383 (N.C. Ct. App. 2006)). Because medical issues are typically complex, expert testimony is required to establish causation in North Carolina. *Id.* at 163.

In this case, the parties only dispute the sufficiency of Dr. Rupe's causation testimony. While North Carolina law sets the substantive elements of medical malpractice cases arising through diversity jurisdiction, "whether there is sufficient evidence to create a jury issue" regarding the element of causation "is controlled by federal rules." *Fitzgerald*, 679 F.2d at 346. Under binding Fourth Circuit precedent, for the question of causation to reach the jury in a medical malpractice case, a medical expert's causation opinion must "rise[] to the level of a 'reasonable degree of medical certainty' that it was more likely that the defendant's negligence was the cause than any other cause." *Id.* at 350; *see also Owens by Owens v. Bourns, Inc.*, 766 F.2d 145, 149–50 (4th Cir. 1985) (citing *Fitzgerald*, 679 F.2d at 346).

This evidentiary standard is "not merely one of semantics." *Fitzgerald*, 679 F.2d at 350 (quoting *McMahon v. Young*, 276 A.2d 534, 535 (Pa. 1971)). It is essential given the jury's reliance on expert testimony in medical malpractice cases. As we explained in *Fitzgerald*, "[t]he opinion of a medical expert is evidence" and "if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment." *Id.* at 350–51 (quoting *McMahon*, 276 A.2d at

9

535); *see also Blake By & Through Blake v. Juskevich*, 998 F.2d 1008, *3 (4th Cir. 1993) (per curiam) ("If a doctor serving as an expert witness cannot state his medical opinions with a reasonable degree of certainty, then a jury should not be allowed to rely upon them in reaching its decision. Expert witnesses' opinions are critical in medical malpractice cases; a direct, unequivocal expression of their opinion is necessary to constitute legally competent proof."). This is a "stringent standard" that "aids in ensuring that when expert opinion is taken as fact by the jury, it is relying on legally competent evidence." *Blake*, 998 F.2d at 1008, at *2. To that same aim, "medical opinion that is inconsistent with the entirety of an expert's testimony is not sufficient to raise a jury question." *Owens*, 766 F.2d at 150.

Nor must the expert recite the magic words "reasonable degree of medical certainty" for his or her testimony to reach a jury; rather, the expert's testimony as a whole must demonstrate his or her opinion is held to a reasonable degree of medical certainty. *See Blake*, 998 F.2d at 1008, *3 (finding the absence of the words "reasonable degree of medical certainty" immaterial to the certainty determination); *see also Jordan v. Iverson Mall Ltd. P'ship*, No. GJH-14-37, 2018 WL 2391999, at *5–7 (D. Md. May 25, 2018) ("[T]here is no requirement that an expert use any 'magic words' for their opinion to be admissible. However, the expert's testimony taken as a whole must still demonstrate that the expert is confident in his or her opinion to a reasonable degree of certainty . . . .").

Our precedents in *Fitzgerald*, *Blake*, and *Owens* are instructive in determining whether Dr. Rupe testified to a reasonable degree of medical certainty.

In *Fitzgerald*, we reviewed the "entire substantive evidence of causation" to determine the sufficiency of the expert's causation opinion. *Fitzgerald*, 679 F.2d at 354–56. Because the expert explicitly and repeatedly refused to state that he held his causation opinion—that defendant's alleged negligence during a medical operation more likely than not caused plaintiff's lung infection—to a reasonable degree of medical certainty, we affirmed a directed verdict for the defendant. *Id.* at 355–56.

In *Blake* we similarly affirmed a directed verdict because the expert's testimony did not rise to a reasonable degree of medical certainty. 998 F.2d at 1008, *3. During plaintiff's labor, defendant declined to perform a C-section, instead opting to use a forceps procedure to "hasten delivery," and plaintiff's child was born with a defect. *Id.* at 1008, *1. When questioned, the expert stated that, were a C-section performed, it was "[m]ore probable than not, th[e] injury would not have occurred." *Id.* at 1008, *2. However, the expert repeatedly noted that he could not "say [this] with certainty." *Id.* We held that because the expert could not couch his opinion in terms of a reasonable degree of certainty, "these responses f[e]ll below the standard required by this court" and it would be improper to allow a jury to consider the expert's opinion as "legally competent proof." *Id.* at 1008, *2–3. We further explained, "[t]his is not a case where an expert witness fails to say the magic words 'reasonable degree of medical certainty,' but a situation where a medical expert witness was not sure of his conclusions." *Id.* at 1008, *3.

Finally, in *Owens*, a defective design case, plaintiffs alleged their infant's blindness was caused by a single incident in which defendant's assisted breathing machine exposed the infant to excessive oxygen. *Owens*, 766 F.2d at 146, 148. Plaintiffs' causation experts

11

opined this single exposure was more probably than not the event that caused the infant's blindness. *Id.* However, the experts acknowledged that the infant exhibited high blood oxygen levels on multiple occasions unrelated to the incident and received high concentrations of oxygen from other sources. *Id.* at 149–50. Noting these contradictory facts, we held that although the experts "asserted a reasonable degree of medical certainty" in their written report, the presence of multiple potential sources of oxygen did not justify that certainty because "medical opinion that is inconsistent with the entirety of an expert's testimony is not sufficient to raise a jury question." *Id.* (citing *Fitzgerald*, 679 F.2d at 346).

### III.

These cases set forth two distinct requirements for a medical expert's causation testimony to reach a jury: (1) the likelihood that defendant's conduct caused plaintiff's injury (which must be more probable than not), and (2) whether the expert expressed this "more likely than not" opinion to a reasonable degree of medical certainty. *See, e.g.*, *Fitzgerald*, 679 F.2d at 348–50 (first explaining that an expert must explain that the defendant's negligence was "more likely" the cause than any other cause and then stating "[m]oreover, in order to qualify on causation, the opinion testimony of the expert may not be stated in general terms but must be stated in terms of a 'reasonable degree of medical certainty'" (citations omitted)); *Blake*, 998 F.2d at 1008, *3.

The parties do not dispute that Dr. Rupe's testimony meets the first prong, and the record shows she consistently opined that Ms. Riggins more likely than not aspirated thin liquids. However, a reading of the entire record shows Dr. Rupe did not hold this opinion to a reasonable degree of medical certainty.

12

A.

Like the experts in *Fitzgerald* and *Blake*, Dr. Rupe acknowledged at deposition that she could not single out a particular cause of aspiration with a reasonable degree of medical certainty. Instead, she twice affirmatively declined to adopt this standard when prompted. *See Owens*, 766 F.2d at 150; *Fitzgerald*, 679 F.2d at 355–56; *Blake*, 998 F.2d at 1008, *3. As such, Dr. Rupe's testimony is facially inadequate.

Plaintiff argues this "misconstrued soundbite" is insufficient to warrant a grant of summary judgment. Appellant's Br. at 8. But an examination of the substance of Dr. Rupe's entire testimony reveals she lacked confidence in her theory of causation. *See Fitzgerald*, 679 F.2d at 354–56 (examining the "entire substantive evidence of causation"). Not only did Dr. Rupe state she could *not* testify with a reasonable degree of certainty, nowhere in her deposition testimony did she state or otherwise demonstrate the degree of certainty she *could* attach to her causation opinion. In fact, when first asked how certain she was, Dr. Rupe merely restated her conclusion that thin liquids were the most likely culprit.

Further, Dr. Rupe repeatedly acknowledged that she was unsure what substance Ms. Riggins aspirated, instead candidly admitting that Ms. Riggins could have aspirated food, thickened liquids, or her own secretions. When asked about those alternative causes, Dr. Rupe could not articulate any reason why thin liquids would have been the most likely culprit, again offering conclusory statements that they were. *See Owens*, 766 F.2d at 150–51 (finding expert testimony inadequate when, despite claiming to hold opinions to

13

"reasonable degree of medical certainty," experts acknowledged other possible causes and could not explain why their preferred cause was most likely).

Consequently, "[t]his is not a case where an expert witness fail[ed] to say the magic words." *Blake*, 998 F.3d at 1008, *3. Instead, this is a case where the expert demonstrated that she was not sure of her opinions, declined to consistently and confidently support or explain them, and, when confronted, expressly rejected the required standard of certainty. *See id.* Dr. Rupe's causation testimony was thus insufficient to reach the jury.

B.

Plaintiff urges us to consider *Day v. Brant*, 721 S.E.2d 238 (N.C. Ct. App. 2012), for the proposition that Dr. Rupe's level of certainty in her causation opinion is a "matter[] of evidentiary weight, to be weighed by the jury." Appellant's Br. at 12. Plaintiff's reliance on *Day* is improper for two reasons.

First, the decision in *Day* was based on state law. Under binding precedent in *Fitzgerald* and *Owens*, "the sufficiency of the evidence to create a jury question is a matter governed by federal law," not state law. *Owens*, 766 F.2d at 149 (citing *Fitzgerald*, 679 F.2d at 346). As we explained in those cases, the court must evaluate the expert's level of certainty in his or her opinion testimony before a jury may rely on it. *See Fitzgerald*, 679 F.2d at 350; *Owens*, 766 F.2d at 149. As such, the degree of certainty with which an expert expresses his or her opinion is not purely a jury question in this Circuit.

Second, *Day* is factually distinguishable. In *Day*, the court found medical causation testimony sufficient where the expert opined that he believed, to a reasonable degree of medical certainty, that defendants' actions more likely than not caused the death of a victim

14

of a car accident but expressed uncertainty as to an exact survival rate percentage had the victim received different medical treatment. 721 S.E.2d at 249–50. Unlike *Day*, the testimony here is not slightly uncertain on an ancillary question. Rather, Dr. Rupe's causation testimony, taken as a whole, is not stated to a reasonable degree of medical certainty.

C.

Plaintiff alternatively argues (again citing *Day*, as well as other North Carolina cases) that Dr. Rupe's testimony that Ms. Riggins "more likely than not" aspirated thin liquids suffices to demonstrate a reasonable degree of medical certainty in her opinion. Appellant's Br. at 12. This interpretation conflicts with *Fitzgerald*, *Owens*, and *Blake*. As already discussed, those cases require: (1) that the expert opine that the breach in the standard of care more probably than not caused the defendant's injuries and (2) that opinion be expressed to a reasonable degree of medical certainty. *See Fitzgerald*, 679 F.2d at 348–50; *Blake*, 998 F.2d at 1008, *3.

Dr. Rupe's testimony that aspirating thin liquids was the most likely cause of Ms. Riggins's death addressed the first requirement. However, as *Blake* illustrates, testimony that the alleged negligence was the "more probable than not" cause of plaintiff's injury alone is not enough. The expert's testimony must be stated "with sufficient certainty." *Fitzgerald*, 679 F.2d at 350–51 (explaining that a reasonable degree of medical certainty requires specificity and that "the only evidence offered was that [the injury] was 'probably' caused [by defendant's breach,] and that is not enough" (quoting *McMahon*, 276 A.2d at 535)); *see also Blake*, 998 F.2d at 1008, *3. As described above, Dr. Rupe affirmatively

15

disclaimed the appropriate certainty standard and declined to stand by or explain her opinion that thin liquids were the most likely item aspirated. Her testimony therefore cannot satisfy the second inquiry. *See Fitzgerald*, 679 F.2d at 350–51.

In sum, taken together and considered in the light most favorable to Plaintiff, Dr. Rupe's explicit refusal to state her opinion to a reasonable degree of medical certainty, her wavering answers as to whether and why thin liquids were the most likely culprit, and her failure to demonstrate what degree of certainty she actually possessed in her causation opinions are insufficient to ensure that if her "expert opinion is taken as fact by the jury, it is relying on legally competent evidence." *Blake*, 998 F.2d at 1008, *3; *see also Fitzgerald*, 679 F.2d at 350–51. Dr. Rupe's expert testimony on causation is thus insufficient to withstand summary judgment.

For these reasons, we hold that summary judgment was properly granted.

IV.

Turning now to whether the district court abused its discretion in striking portions of Plaintiff's affidavit as contradictory, we hold that it did not.

A.

As a threshold matter, Defendant contends Plaintiff waived his argument that Dr. Rupe's affidavit is consistent with her deposition because he did not argue the absence of a "bona fide inconsistency" between the affidavit and the deposition below. Appellee's Br. at 24, 29–31. We do not consider an issue raised for the first time on appeal unless refusing to do so "would be plain error or result in a fundamental miscarriage of justice." *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993).

16

However, Plaintiff's opposition to Defendant's motion to strike articulated his reasoning why the affidavit and the deposition were consistent: because Dr. Rupe's affidavit merely detailed and lent context to her deposition testimony. *See* Dist. Ct. Dkt. No. 51 at 2 ("[V]iewing the deposition as a whole, and reading it with the actual language of her Affidavit, makes clear that Dr. Rupe's opinions have remained the same across her written report, her deposition testimony, and her Affidavit."). Plaintiff advances the same argument on appeal. *See* Appellant's Br. at 18–20 (arguing that there "was no clear, unambiguous, or blatant contradiction between Dr Rupe's deposition testimony and her affidavit" and that the affidavit simply lent context to her earlier testimony). As such, Plaintiff's challenge to the district court's decision to strike is properly before us.

B.

We review a district court's decision to strike portions of an affidavit for abuse of discretion and the underlying factual determinations for clear error. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). When reviewing for an abuse of discretion, "this Court may not substitute its judgment for that of the district court; rather, we must determine whether the court's exercise of discretion, considering the law and the facts, was arbitrary or capricious." *United States v. Banks*, 482 F.3d 733, 742–43 (4th Cir. 2007) (quoting *United States v. Mason*, 52 F.3d 1286, 1289 (4th Cir. 1995)). Accordingly, abuse of discretion is a very deferential standard of review, and we may act "only when the decision could not 'have been reached by a reasonable jurist,' or when we may call it 'fundamentally wrong,' 'clearly unreasonable, arbitrary, or fanciful.'" *Brown v. Nucor*

17

*Corp.*, 785 F.3d 895, 928 (4th Cir. 2015) (quoting *Bluestein v. Cent. Wis. Anesthesiology, S.C.*, 769 F.3d 944, 957 (7th Cir. 2014)).

It is a "long-standing principle that a party against whom summary judgment is sought cannot create a jury issue by identifying discrepancies in his own account of the facts." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 n.7 (4th Cir. 2001) (citing *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990)); *see also Williams v. Genex Servs., LLC*, 809 F.3d 103, 110 (4th Cir. 2015) ("It is well-settled that a plaintiff may not avoid summary judgment by submitting contradictory evidence. To do so 'would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" (quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984))).

Conflicting versions of a medical expert's testimony warrant caution because they "may not represent the considered opinion of the doctor himself, but rather an effort on the part of the plaintiffs to create an issue of fact." *Rohrbough*, 916 F.2d at 976. However, to strike portions of an affidavit for this reason "there must be a bona fide inconsistency" between the prior deposition testimony and the affidavit. *Spriggs*, 242 F.3d at 185 n.7. No such inconsistency exists when the affidavit "merely detail[s] and lend[s] context" to the prior testimony, *Judd*, 718 F.3d at 314 n.6, or offers information "patently outside the scope of the [deposition] questioning." *Spriggs,* 242 F.3d at 185 n.7. *Rohrbough* is instructive here.

In *Rohrbough*, a products liability case, the defendant's medical expert refused to directly opine as to whether defendant's vaccine caused plaintiff's condition, instead stating the plaintiff's symptoms "were consistent" with those seen in "literature to be

18

associated with a reaction to [the vaccine]." 916 F.2d at 974–75. However, in response to plaintiff's motion for summary judgment, the same expert submitted an affidavit stating that the vaccine "caused [plaintiff's] neurological injuries." *Id.* at 975–76. We noted the expert's deposition testimony did not meet the required standard of causation for purposes of summary judgment, while the affidavit did. *Id.* Concluding such contrast did not present the district court with a genuine issue of material fact, but a choice of which version of the expert's testimony was correct, we found the inconsistency significant and struck the affidavit as a likely sham. *Id.*

Dr. Rupe's affidavit creates a similar inconsistency. At various points in her deposition, Dr. Rupe admitted that she did not know what Ms. Riggins aspirated, acknowledged that Ms. Riggins could have aspirated food, thickened liquids, or her own secretions, and opined that thin liquids were the most likely candidate. However, when pressed, Dr. Rupe twice acknowledged that she could not state to a reasonable degree of medical certainty that thin liquids were more likely than not the cause of Ms. Riggins's aspiration. Following this explicit disclaimer of the relevant standard, she did not articulate any standard by which to measure her theory of causation. Yet, in in her affidavit, Dr. Rupe presented a new measure: "a reasonable degree of medical causation and probability." J.A. 165–66.

Dr. Rupe did not explain the meaning of that term. If she meant "a reasonable degree of medical certainty," then her affidavit flatly contradicts her deposition testimony, where she twice expressly disavowed that standard. *See Rohrbough*, F.2d at 976.

If not, then her affidavit introduces a new and undefined metric, one that does not "merely detail and lend context" to her deposition testimony. *Judd*, 718 F.3d at 314 n.6. At deposition, Dr. Rupe was asked a straightforward question: whether she could state her causation opinion to a reasonable degree of medical certainty. She gave an equally unambiguous answer: no. The stricken portion of Dr. Rupe's affidavit does not lend context to Dr. Rupe's unequivocal denial of the requisite degree of certainty. Instead, it puts forward a new and undefined standard. And as the district court properly noted, Dr. Rupe only introduced this new standard after Defendant moved for summary judgment, after Plaintiff's counsel failed to rehabilitate Dr. Rupe, and after Dr. Rupe declined to change her testimony via North Carolina Rule of Civil Procedure 30(e). *Riggins*, 2018 WL 4374929, at *4–5; *see Rohrbough*, 916 F.2d at 976 (considering timing of subsequent affidavit in determining it to be a sham); *McLaurin v. E. Jordan Iron Works, Inc.*, No. 5:08-CV-89-F, 2009 WL 10688993, at *6 (E.D.N.C. Oct. 27, 2009) (finding sham affidavit when expert claimed to be unable to articulate minimum inspection standards at deposition but later submitted affidavit setting forth such standards).

In striking portions of Dr. Rupe's affidavit as inconsistent with her deposition, the district court properly considered the above factors, noting that Dr. Rupe explicitly disclaimed the appropriate standard, failed to correct her testimony until faced with summary judgment, and then introduced a vague, competing standard. *Riggins*, 2018 WL 4374929, at *4–5. The district court, forced to choose between two versions of Dr. Rupe's testimony as to her level of certainty, granted in part the motion to strike. *See id.*; *Rohrbough*, 916 F.2d at 976–77. Given the district court's consideration of the above facts

20

and law, its decision is neither irrational nor so "clearly unreasonable" as to warrant a finding of abuse of discretion. *See Brown*, 785 F.3d at 928.

We therefore conclude that the district court did not abuse its discretion in striking portions of Dr. Rupe's affidavit.

V.

In conclusion, we affirm the district court as to all issues.

*AFFIRMED*